## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | |
|---|---|
| **Robin V. Ismail, individually and on behalf of all others similarly situated pursuant to 29 U.S.C. § 216(b),** | |
| *Plaintiffs,* | **No.** |
| **v.** | |
| **GRAZIA ITALIAN KITCHEN PEARLAND LLC d/b/a Grazia Italian Kitchen** | **PLAINTIFF'S COLLECTIVE ACTION COMPLAINT** |
| *Defendants.* | |

## PLAINTIFF'S COLLECTIVE ACTION COMPLAINT

The case is brought against Grazia Italian Kitchen Pearland, LLC d/b/a Grazia Italian Kitchen ("Defendant") as a result of their unlawful practices that deprive their employees—including Plaintiff and other employees like Plaintiff—of the wages rightfully owed to them under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Plaintiff brings this complaint individually and on behalf of all other similarly situated employees—other servers—who were paid a direct hourly wage of less than $7.25 per hour while working at any of Defendant's restaurants in Texas during the last three (3) years.

## **<u>Table of Contents</u>**

I.      Summary of FLSA Minimum Wage and Tip Credit Violations ............................................3

II.     Parties ................................................................................................................... 8

III.    Jurisdiction and Venue ........................................................................................... 9

IV.     Defendants are Required to Comply with the FLSA ............................................. 9

V.      Facts Supporting Minimum Wage and Tip Credit Violations ............................. 11

VI.     Collective Action Allegations ............................................................................ 19

VII.    Cause of Action No. 1: Failure to Pay the Minimum Wage .............................. 20

VIII.   Wage Damages Sought ...................................................................................... 21

IX.     Prayer for Relief ................................................................................................ 22

### I.    SUMMARY OF FLSA MINIMUM WAGE AND TIP CREDIT VIOLATIONS

1.    Defendant paid Plaintiff—and other servers like Plaintiff—an hourly wage that is less than $7.25 per hour, which is the minimum wage required by the FLSA, 29 U.S.C. § 206.

2.    Instead of paying its servers the full minimum wage required by the FLSA, it appears Defendant was attempting to take credit for the tips its servers earned in order to supplement and meet their obligation to pay the minimum wage required by the FLSA. This method of paying tipped employees less than minimum wage and relying on tips to meet the minimum wage requirement is commonly referred to as taking a "tip credit." *See* 29 U.S.C. § 203(m).

3.    Under the FLSA's tip credit provisions—an affirmative defense—an employer may, under certain circumstances, pay "tipped employees" less than the minimum wage by taking a "tip credit" against the employer's minimum wage obligations from the tips its employees receive from customers. In other words, if an employer can prove it complied with the strict requirements for taking a tip credit, then the employer may be permitted in limited circumstances to pay its tipped employees as little as $2.13 per hour by taking a "credit" for a portion of the tips an employee earns up to a maximum tip credit of $5.12 per hour. *See* 29 U.S.C. 203(m).

4.    However, in order to take a credit for *any* portion of an employee's tips, the employer must first show compliance with the strict requirements for taking a "tip credit" *See* 29 U.S.C. 203(m).

5.    For example, an employer must advise its employee *prior* to taking a tip credit that the employer will be utilizing a tip credit and provide the employee with notice of each of the tip credit provisions required by the FLSA. *See e.g., Id.* (the tip credit provision "shall not apply with

respect to any tipped employee unless such employee has been informed by the employer of the provisions of [the tip credit].").

6.      More specifically, prior to taking a tip credit, "an employer must inform tipped employees of its use of the tip credit including [1] the amount of the employee's cash wage, the amount of the tip credit claimed by the employer, [2] that the amount claimed may not exceed the value of the tips actually received, [3] that all tips received must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips, and [4] that the tip credit shall not apply to any employee who has not been informed of all of these requirements." *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *5-6 (5th Cir. Mar. 18, 2022) (citing 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b)).

7.      Moreover, an employer must also provide the employee with <u>written</u> notice of the information required by 29 C.F.R. § 516.28(a)(3). Specifically, the employer must provide all affected employees with written notice as follows: "[t]he amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week." *See* 29 C.F.R. § 516.28(a)(3).

8.      In addition to providing notice of the tip credit, the employer must show that its tipped employees retained one hundred percent of all their tips other than tips contributed to a lawful tip pool—that is, a tip pool that is fully distributed solely among customarily and regularly tipped employees. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal…"); *Portales v. MBA Inv. Co., LLC*, No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014) ("When an employer includes a non-customarily tipped employee or another employer in a

mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

9.    Moreover, an employer will not be permitted to take a tip credit where its tipped employees kick-back, either directly or indirectly, to the employer for anything other than "the reasonable cost . . . of furnishing [an] employee with board, lodging, or other facilities, if [they] are customarily furnished by [the] employer to his employees." *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *9 (5th Cir. Mar. 18, 2022) (quoting 29 U.S.C. § 203(m)). In other words, an employer violates the tip credit if its tipped employees have to pay for their own uniforms, tools, or any other items used in connection with their employment "unless the 'facilities' it covers counts as a 'wage.'" *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *9 (5th Cir. Mar. 18, 2022).

10.    Furthermore, an employer is only permitted to take a tip credit and pay its tipped employees the subminimum hourly wage when the employee is engaged duties related to their tipped occupation. In other words, an employer is prohibited from taking a tip credit and paying its tipped employees subminimum hourly wages to perform non-tipped work that is not related to their tipped occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.*, No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017) (employer may not

take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc.*, No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

11.     In addition, an employer is prohibited from taking a tip credit and paying its tipped employees the subminimum hourly wage when the employee is engaged in nontipped duties that, even if they are *related* to the employee's tipped occupation (i.e. nontipped work directly supporting the employee's tipped work), take up more than 20 percent of the employee's time. *See Marsh v. J. Alexander's, LLC*, 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern.*, Inc., 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois, LLC*, No. 06-civ-6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois*, LLC, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendant's motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable

interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties.").

12.    Finally, an employer violates the tip credit by paying tipped employees subminimum hourly wages to perform *related* nontipped duties, where the employee is engaged in such related nontipped duties for more than 30 continuous minutes. *See* 29 C.F.R. 531.56(f)(4).

13.    Here, Defendant violated the FLSA by paying Plaintiff and the Collective Members a direct cash hourly wage of less than minimum wage ($7.25) required by the Section 206 of the FLSA.

14.    Moreover, Defendant committed multiple violations of the tip credit, and therefore, Defendant cannot rely on tips to supplement the subminimum hourly wage it paid to Plaintiff and the Collective Members.

    a.    **Violation for failure to inform:** Defendant failed to correctly inform Plaintiff and the Collective Members of its desire to rely on the tip credit to meet the minimum wage. For instance, Defendant failed to inform Plaintiff of (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice. In addition, Defendant failed to advise Plaintiff or the Collective Members in writing of the amount of the tip credit being taken each time it changed from the prior week.

    b.    **Violation for illegal kickbacks for non-203(m) items:** Plaintiff and the Collective Members were required to pay for certain clothing, tools, and other non-203(m) items during their employment as servers for Defendant.

    c.    **Violation for improper handling of the tip pool, including exerting unlawful control over Plaintiff's tips vis-à-vis the tip pool:** Plaintiff and the Collective Members contributed a portion of their tips to a tip pool. However, Defendant did not distribute the tip pool pursuant to an agreement with its servers. In addition, Defendant cannot prove that its tip pool was fully distributed solely among customarily and regularly tipped employees.

d. **Violation for performing work unrelated to tipped occupation:** Plaintiff and Collective Members were required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to sweeping, cleaning the restaurant, polishing silverware and glasses, stocking workstations, and other tasks unrelated, to their job as servers.

e. **Violation for requiring servers to perform nontipped duties in excess of 20% of their time and for periods longer than 30 minutes:** Plaintiff and Collective Members were required to perform nontipped duties that even if such duties were related to their job as servers, such duties took up more than 20% of their time and were also performed for more than 30 continuous minutes at a time. These duties included, but are not limited to: setting up tables, cleaning tables, wiping booths, refilling condiments, amongst other duties.

15.    As a result of these violations, Defendant did not comply with the strict requirements for taking a tip credit and thus have lost any ability to rely on the tip credit to supplement their failure to pay Plaintiffs the full minimum wage. Therefore, Defendant must compensate Plaintiff and all similarly situated employees—servers—the full minimum wage rate, unencumbered by the tip credit, for all hours worked. In other words, Defendant must account for the difference between the subminimum hourly wage paid to Plaintiff and Collective Members and the full minimum wage ($7.25) required by the FLSA. In addition, Defendant is liable to Plaintiff and the Collective Members for all misappropriated tips, plus liquidated damages in an amount equal to all damages owed to them. Finally, Plaintiff and Collective Members are entitled to recover an additional award to compensate them for their attorneys' fees and costs.

## II.    PARTIES

16.    Plaintiff Robin V. Ismael is an individual and resident of Texas. Plaintiff was employed by Defendant as a server from April 2022 until approximately August 2023. Plaintiff was employed by Defendant to work as a server at its restaurant in Pearland, Texas known as Grazia Italian Kitchen & Pizzeria. As evidenced by the notice of consent being filed with the Court,

Plaintiff has consented to be a party-plaintiff to this action brought under the FLSA.

17.     The putative collective of similarly situated employees ("Collective Members") consists of all Defendant's current and former employees who worked at least one shift as a server (i.e. waiter or waitress) and were paid a direct cash wage of less than minimum wage during the three-year period prior to the commencement of this action through the date this case is certified as a collective action. Collective Members will "opt in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. *See* 29 U.S.C. § 216(b).

18.     Defendant Grazia Italian Kitchen Pearland, LLC d/b/a Grazia Italian Kitchen is an entity formed under the laws of Texas. Defendant qualifies as an employer as that term is defined under the FLSA, 29 U.S.C. § 203(d), and therefore, Defendant liable for violating the FLSA.

### III.    JURISDICTION AND VENUE

19.     Defendant is subject to personal jurisdiction in Texas because Defendant resides in the State of Texas.

20.     In addition, Defendant has sufficient minimum contacts with the State of Texas to confer personal jurisdiction. Defendant conducts business in Texas and employed Texas residents, such as Plaintiff and the Collective Members, to work in Texas.

21.     This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), et. seq.

22.     Venue is proper in this District because Defendant resides in this District. In addition, venue is proper in this Division and District because a substantial part of the events and omissions giving rise to this claim occurred in this Division and District.

### IV.    DEFENDANTS ARE REQUIRED TO COMPLY WITH THE FLSA

23.     At all material times, Defendant is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

24.     At all relevant times, Defendant has acted directly or indirectly in the interest of an employer with respect to Plaintiff and the Collective Members.

25.     At all relevant times, Plaintiff and the Collective Members were individual "employees" of Defendant (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)).

26.     At all relevant times, Defendant has acted directly or indirectly in the interest of an employer with respect to Plaintiff and the Collective Members.

27.     At all relevant times, Defendant has collectively, or individually, been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

28.     Finally, as part of their employment for Defendant, Plaintiff and the Collective Members handled food and other food service items that were purchased across state lines or traveled in interstate commerce, or both. Plaintiff and the Collective Members also served customers who were traveling from out-of-state or across interstate lines. In addition, Plaintiff and the Collective Members regularly and frequently processed interstate credit card transactions. Finally, Plaintiff and Collective Members handled food and beverages that had been procured and

traveled across interstate lines.

### V.      FACTS SUPPORTING MINIMUM WAGE AND TIP CREDIT VIOLATIONS

29.     Defendant owns and operates the dining establishment known as Grazia Italian Kitchen where it employs servers—including Plaintiff and the Collective Members—to serve and wait on Defendant's customers.

30.     In exchange for their labor, Defendant pays its servers an hourly wage that is far less than the federally mandated minimum wage.

31.     At relevant times, Defendant paid Plaintiff less than minimum wage.

32.     Because Defendant paid its servers less than minimum wage, in order to earn an income, Defendant's servers are required to rely on tips customers leave for them in recognition for the service they provided.  See *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 190 (5th Cir. 2015) (a tip is "'a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. . . . []'") (quoting 29 C.F.R. § 531.52) (emphasis added).

33.     The FLSA provides employers in limited circumstances and if all conditions are satisfied, to take a credit for a portion of the tips its employees earn in order to offset a portion (up to $5.12 per hour) of the required minimum wage. This method of payment is known as taking a "tip credit"—an affirmative defense—under the FLSA. *See e.g.,* 29 U.S.C. § 203(m).

34.     Here, Defendant purportedly sought to take advantage of the tip credit— Defendant paid its servers less than minimum wage.

35.     The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit. (See https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-

wage/, last visited August 26, 2023). The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.** As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(Id.) (emphasis in original)

36.    Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the tip credit to offset its minimum wage obligations.

37.    Here, Defendant did not satisfy the strict requirements for taking a tip credit. For instance, Defendants maintained a policy and practice whereby they failed to provide Plaintiff and the Collective Members with the statutorily required notice of the tip credit regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

38.    In addition, Defendant also failed to provide Plaintiff and the Collective Members with **written** notice of the information required by 29 C.F.R. § 516.28(a)(3). Specifically, "[t]he amount per hour which [Defendants took] as a tip credit" was **not** "reported to [Plaintiff and the Collective Members] **in writing** each time it [was] changed from the amount per hour taken in the preceding week." *See* 29 C.F.R. § 516.28(a)(3) (emphasis added).

39.     Because Defendant failed to give Plaintiff and the Collective Members notice of all the provisions required by the FLSA (including written notice of the contents required by 29 C.F.R. § 516.28(a)(3)), Defendant cannot rely on tips and utilize the tip credit as an affirmative defense to the failure to pay Plaintiff and the Collective Members the minimum wage required by Section 206 of the FLSA.

40.     Second, Defendant did not allow Plaintiff and Collective Members to retain all tips as required by Section 203(m).

41.     For instance, Defendant subjected Plaintiff and the Collective Members to an illegal policy that required Plaintiff and the Collective Members to pay for their uniforms, tools, and other non-203(m) items. Plaintiff and the Collective Members were required to pay for uniforms, tools, and incurred other expenses.

42.     In addition, Defendant deducted a "Beverage Fee" from Plaintiff's and Collective Members' paychecks.

43.     Because Plaintiff and the Collective Members paid for their uniforms, tools, and other non-203(m) items, Defendant violated the tip credit because the costs of these non-203(m) items is a retention of tips and violates condition two of 29 U.S.C. § 203(m). *See e.g., Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (holding that a general deduction for cash register shortages tends to "shift part of the employer's business expense to the employees" and is impermissible if the deduction drops cuts into the statutory minimum wage); *Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) ("[t]he FLSA does not permit an employer to transfer to its employees the responsibility for the expense of carrying on an enterprise."); 29 C.F.R. 531.3(d)(1), (2); 29 C.F.R. 531.32(c); *see also Herman v. Collis Foods, Inc.,*

176 F.3d 912, 918 (1999) (recognizing "the FLSA's policy of preventing employers from exploiting § 203(m) deductions for profit.").

44.    Moreover, Plaintiff and the Collective Members were required to contribute a portion of their tips to a tip pool.

45.    The FLSA requires that an employer ensure that "all tips received by [each] employee [be] retained by the employee . . .." 29 U.S.C. § 203(m). The sole exception to the requirement that employees retain all earned tips, when an employer takes the tip credit, is where the employer operates a lawful tip pool. *See id.* (requiring that "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips"); 29 C.F.R. § 531.54 ("[V]alid mandatory tip pools . . . can only include those employees who customarily and regularly receive tips.").

46.    Here, Defendant violated the tip credit by unlawfully "exercising control over a portion of the[ir servers'] tips." *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998); *see also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 894 (D. Md. 2011) (finding violation of the FLSA where employer exercised control over employee's tips in violation of the tip credit provisions).

47.    For instance, Defendant unilaterally determined how to allocate tips from the tip pool—there was no agreement among the servers regarding the allocation of their tips from the tip pool. *See Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) (holding "tipped employees must agree on the distribution of the tipped pool for the pool to be deemed valid.") (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)); *see also* 29 C.F.R. § 531.54

14

(defining a permissible "pooling arrangement" as one where "the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves"). Because Defendant unilaterally decided, without input or agreement from Plaintiff and the Collective Members, how to distribute the servers' tips from the tip pool, Defendant did not comply with the FLSA and thus cannot claim a tip credit.

48.     In addition, Defendant illegally exercised control over Plaintiff's and Collective Members' tips when Defendants chose to utilize the tip pool to reduce their payroll expense and pad their bottom line. Defendant cannot prove that it fully distributed the tip pool solely among customarily and regularly tipped employees. *See Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011) (employer has "the burden to prove it operated a legal tip pool"); *see also Steele*, 826 F.3d at 242 ("The employer carries the burden to prove its entitlement to the tip credit."); *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015) (holding employer "has the burden of establishing its entitlement to the tip credit.").

49.     Because Defendant cannot prove that it fully and lawfully distributed the tip pool solely among customarily and regularly tipped employees, Defendant cannot utilize the tip credit to pay Plaintiff and the Collective Members. *See e.g., Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979) (holding that TGI Friday's had the burden to prove a valid tip pool arrangement after its servers brought suit questioning the validity of the tip pool); *Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)) ("[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'").

50.     Defendant also maintained a policy and practice whereby servers were required to perform non-tip producing side work unrelated to their tipped occupation as servers. Defendants continued compensating Plaintiff and the Collective Members at the subminimum "tip credit" rate while they were engaged in nontipped work (i.e. work unrelated to their job as servers). To be sure, while performing these non-tip generating duties, Plaintiff and the Collective Members were performing work that did not include interacting with or serving customers— Plaintiff and the Collective Members were not performing the type of work that generally evokes tipping generosity.

51.     These non-tipped duties included but were not limited to the following: sweeping, cleaning, polishing silverware and glasses, cleaning the restaurant, kitchen duties, breaking down stations, garnishing food, restocking items, and many other activities that are not related to the tipped occupation of a server.

52.     Defendant also maintained a policy and practice whereby Plaintiff and the Collective Members were required to spend a substantial amount of time, in excess of 20 percent and for periods longer than 30 continuous minutes, performing nontip producing duties related to their tipped occupation as servers.

53.     Specifically, Defendant maintained a policy and practice whereby Plaintiff and the Collective Members were required to spend a substantial amount of time, and much more than 20 percent of their time, performing nontip producing duties, including, but not limited to: preparatory work, setting up the restaurant, breaking down the restaurant, cleaning tables, bussing tables, wiping booths, and other nontipped duties.

54.     Further, Defendant required Plaintiff and the Collective Members to perform non-tip producing work prior to the opening of the restaurant and after the restaurant closed. Indeed,

Defendant required the Plaintiff and the Collective Members to arrive prior to the restaurant's opening for business when no customers were present and thus there was no opportunity to earn tips and required Plaintiff and Collective Members to perform non-tipped labor.

55.     Likewise, Defendant required Plaintiff and Collective Members to remain at the restaurants after they had closed for business and when there was no opportunity to earn tips, to perform non-tipped labor. Plaintiff and Collective Members spent far more than twenty percent of their time engaged in non-tip producing tasks and for continuous periods of time exceeding 30 minutes—including before the restaurant was open and after the restaurant was closed.

56.     Defendant continued paying Plaintiff and the Collective Members at the tip credit rate—less than minimum wage—while requiring them to perform these nontipped tasks. Many of the nontipped tasks that Defendant required Plaintiff and the Collective Members to perform are duties that should have been assigned to employees who are required to be paid at least minimum wage.

57.     In other words, instead of assigning these tasks to an employee who paid at least or more than minimum wage, Defendant attempted to take advantage of the tip credit and assign these tasks to Plaintiff and Collective Members while continuing to pay them less than minimum wage.

58.     When Plaintiff and the Collective Members performed these non-tipped duties, they did not interact with customers and did not have an opportunity to earn tips.

59.     Indeed, Defendant did not have a policy prohibiting its tipped employees from performing certain types, or excessive amounts, of non-tipped work.

60.     In fact, Defendant maintained a policy requiring Plaintiff and the Collective

Members to complete various non-tipped tasks each shift.

61.    Moreover, Defendant did not track or record the amount of time Plaintiff or the Collective Members spent performing non-tipped work, even though Defendant had the capability to do so.

62.    Defendant uses a point-of-sale system to record hours worked by their tipped employees.

63.    Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to assign different job codes to Plaintiff and the Collective Members to track when they were engaged in nontipped duties.

64.    In the point-of-sale system, Defendant can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

65.    However, Defendant did not allow their tipped employees to clock-in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

66.    Moreover, Defendant violated the FLSA by not even paying the minimum "tipped" hourly rate. Defendant required their tipped employees to pay for tools, uniform items, such as shirts, pants, and shoes, and other non-203(m) items. These expenses were primarily incurred for the benefit and convenience of Defendant.

67.    Because Defendant violated the requirements to claim the tip credit, Defendant shall be divested of the tip credit and is not permitted to take a credit for any tips to offset the minimum wages required to be paid to Plaintiff and the Collective Members.

68.    As such, Plaintiff and the Collective Members were not compensated at the

federally mandated minimum wage.

69.     Defendant knew or should have known that their policies and practices violate the law, and Defendant failed to make a good faith effort to comply with the FLSA.

70.     Defendant acted knowingly, willfully, and/or with reckless disregard of the law by carrying out the illegal pattern and practice regarding their tipped employees as described in this Complaint. Defendant's method of paying Plaintiff and the Collective Members was not based on a good faith and reasonable belief that their conduct complied with the law.

## VI.    COLLECTIVE ACTION ALLEGATIONS

71.     Plaintiff realleges and reasserts each of the foregoing paragraphs as if set forth in full herein.

72.     Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all current and former employees who worked at least one shift as a server (i.e. waiter or waitress) for Defendant in Texas and were paid a direct cash wage of less than minimum wage during the three-year period prior to the commencement of this action through the date this case is certified as a collective action.

73.     Plaintiff has knowledge, through conversations with co-workers, that a collective of similarly situated workers exists who have been subjected to the same policies of Defendant with respect to the payment of the minimum wage.

74.     Defendant employed other servers who are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

75.     Like Plaintiff, the Collective Members were not given proper notice of the tip credit provisions and performed substantial work that was unrelated to their tip producing duties for a

significant period of time.

76.    Moreover, the Collective Members were all subject to the same unlawful tip pool.

77.    In addition, the Collective Members were similarly required to pay for various uniform items, tools, and other items that were not board, lodging, or other facilities.

78.    The names and addresses of the Collective Members are available from Defendant's records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

79.    Although the exact amount of damages may vary among the Collective Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

80.    As such, the group of similarly situated employees ("Collective Members") can currently be defined as follows:

> **All current and former employees who worked at least one shift as a server (i.e. waiter or waitress) for Defendant in Texas and were paid a direct cash wage of less than minimum wage during the three-year period prior to the commencement of this action through the date this case is certified as a collective action.**

## VII.    CAUSE OF ACTION NO. 1: FAILURE TO PAY THE MINIMUM WAGE

81.    Plaintiff realleges and reasserts each of the foregoing paragraphs as if set forth in full herein.

82.    This count arises from Defendant's violation of the FLSA in connection with their failure to pay the minimum wage. See 29 U.S.C. § 206.

83.    Plaintiff and the Collective Members were paid hourly rates less than the minimum

wage while working for Defendant.

84.    Plaintiff and the Collective Members were not exempt from the minimum wage requirements of the FLSA.

85.    Defendant's failure to comply with the minimum wage requirements of the FLSA, and Defendant's failure to comply with the requirements for taking a tip credit—an affirmative defense—has resulted in Plaintiff and the Collective Members being paid less than the Federal minimum wage rate.

86.    Defendant's failure to pay the minimum wage to Plaintiff and the Collective Members in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. 29 U.S.C. § 255(a).

### VIII.    WAGE DAMAGES SOUGHT

87.    Plaintiff realleges and reasserts each of the foregoing paragraphs as if set forth in full herein.

88.    Plaintiff and the Collective Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

89.    Plaintiff and Collective Members are entitled to reimbursement of all misappropriated tips plus an equal amount as liquidated damages.

90.    Plaintiff and Collective Members are entitled to all their misappropriated funds, including repayment of all expenses Defendant required Plaintiff and Collective Members to incur, plus an equal amount as liquidated damages.

91.    Plaintiff and Collective Members are entitled to an amount equal to all unpaid wages found due (including all their misappropriated tips and unlawful expenses incurred) as liquidated

damages because Defendant's actions were not based upon good faith. See 29 U.S.C. § 216(b).

92.    Plaintiff and Collective Members are entitled to recover damages for the past three

(3) years because Defendant's violations were willful.

93.    Plaintiff and Collective Members are entitled to recover attorneys' fees and costs

as required by the FLSA. See 29 U.S.C. § 216(b).

## IX.    PRAYER FOR RELIEF

94.    For each of the foregoing reasons, Plaintiff, individually and on behalf of Collective

Members, respectfully requests that judgment be entered in their favor and against Defendant,

awarding Plaintiff and the Collective Members the following:

      a.    For an order pursuant to Section 216 of the FLSA finding Defendant liable for unpaid wages (including all misappropriated tips and all unlawful expenses incurred) due to Plaintiff (and those who join in the suit), and for liquidated damages equal in amount to the unpaid minimum wages (including all misappropriated tips and paid business expenses) due to Plaintiff (and those who join in the suit);

      b.    For an order awarding Plaintiff (and those who join in the suit) an amount of pre-judgment interest, as may be appropriate, and post-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

      c.    For an order awarding Plaintiff (and those who join in the suit) all attorneys' fees incurred;

      d.    For an order awarding Plaintiff (and those who join in the suit) all costs and expenses incurred in pursuing this action; and

      e.    For an order granting any such other and further relief as this Court deems just and appropriate.

*      *      *

Respectfully submitted,


By: */s/ Drew N. Herrmann*
       Drew N. Herrmann
       Texas Bar No. 24086523
       drew@herrmannlaw.com

       **HERRMANN LAW, PLLC**
       801 Cherry St., Suite 2365
       Fort Worth, TX 76102
       Phone: 817-479-9229
       Fax: 817-840-5102
       ATTORNEYS FOR PLAINTIFF
       AND COLLECTIVE MEMBERS