Case 3:23-cv-00286   Document 28   Filed on 02/21/25 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
February 21, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| ROBIN V. ISMAIL, | § § § § § § § § § § § | |
| Plaintiff. | | |
| V. | | CIVIL ACTION NO. 3:23-cv-00286 |
| GRAZIA ITALIAN KITCHEN PEARLAND LLC, | | |
| Defendant. | | |

## OPINION AND ORDER

Plaintiff Robin Ismail, a former employee at Defendant Grazia Italian Kitchen Pearland, LLC ("Grazia"), has filed a Motion for Court Authorized Notice in this Fair Labor Standards Act ("FLSA") case. *See* Dkt. 23. For the reasons that follow, the motion is granted.[1]

## BACKGROUND

From April 2022 to August 2023, Ismail worked as a server for Grazia, an Italian restaurant located in Pearland, Texas. Ismail claims that Grazia paid her—and other servers—less than the federal minimum wage of $7.25 per hour in violation of the FLSA. "Instead of [Grazia] paying its servers the full minimum wage required by the FLSA," Ismail contends that Grazia "attempt[ed] to take credit for the tips its servers earned in order to supplement and meet [Grazia's] obligation to pay the minimum wage required by the FLSA." Dkt. 1 at 3. Although an employer may, under certain circumstances, pay less than minimum wage to a "tipped employee," 29 U.S.C. § 203(m)(2)(A), Ismail maintains that Grazia did not comply "with the strict requirements for taking a 'tip credit.'" Dkt. 1 at 3 (quoting

---

[1] A motion asking the court to issue notice of an FLSA collective action is unquestionably a non-dispositive pretrial matter that can be decided in an order by a magistrate judge. *See Guilbeau v. Schlumberger Tech. Corp.*, 719 F. Supp. 3d 702, 711 (W.D. Tex. 2024) (observing that a motion for notice is non-dispositive because it involves procedural case-management rulings and does not adjudicate the merits of any claim).

29 U.S.C. § 203(m)(2)(B)). Ismail also alleges that Grazia required her to pay for mandatory uniforms, tools, and other business-related items in violation of the FLSA.

On September 1, 2023, Ismail sued Grazia for alleged violations of the FLSA on behalf of herself and similarly situated servers. Since filing suit, four other Grazia servers have opted-in as plaintiffs: (1) Jaiden Boyd, (2) Benjamin Campbell, (3) Jerica Graves, and (4) Nhu Tran. *See* Dkts. 10, 13. For ease of reference, I collectively refer to Ismail and the four opt-ins as "Plaintiffs."

Plaintiffs now request that this court authorize notice of this lawsuit to:

> All current and former employees who worked at least one shift as a server (i.e. waiter or waitress) for Grazia in Texas and were paid a direct cash wage of less than minimum wage during the three-year period prior to the commencement of this action through the date this case is certified as a collective action.

Dkt. 23 at 5.

In support of their request to issue notice, Plaintiffs offer four virtually identical declarations from Campbell, Graves, Ismail, and Tran. *See* Dkts. 24-14 to 24-17. Plaintiffs have also provided deposition testimony from Grazia's corporate representative, Grazia's discovery responses, server payroll registers, tip out sheets, a server job manual, a list of duties, and a side work checklist. *See* Dkts. 24-1 to 24-13.

## LEGAL STANDARD

The FLSA gives employees the right to bring an action on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). These so-called "collective actions" allow "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Such actions also benefit the judicial system by encouraging the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Id.* Unlike class actions, in which potential class members may choose to opt-out of the lawsuit,

FLSA collective actions require potential class members to notify the court of their desire to opt-in to the action. *See* 29 U.S.C. § 216(b).

It is the district court's responsibility to decide whether to authorize the issuance of notice of a collective action lawsuit to putative class members. The Fifth Circuit has explained that notice may be issued only to those individuals who are "similarly situated." *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 440 (5th Cir. 2021). To determine whether employees are "similarly situated" with respect to the alleged FLSA violations at issue, district courts consider three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id.* at 437 (cleaned up). The burden rests with the plaintiff to "establish[] similarity." *Id.* at 443. A district court must "consider all of the available evidence" to ensure that collective adjudication of the putative class members' claims will not "devolve into a cacophony of individual actions." *Id.* at 442. Put another way, I must ensure that proceeding as a collective action will not require "a highly individualized inquiry into each potential opt-in's circumstances," as that would detract from the FLSA's overarching goal to efficiently resolve in one proceeding issues of law and fact that are common to members of the collective action. *Id.* "The bottom line is that the district court has broad, litigation-management discretion" to decide whether to allow the issuance of notice. *Id.* at 443.

In determining whether to issue notice, district "[c]ourts must be cautious about opining on or endorsing the merits of a plaintiff's action at the notice stage." *Cortez v. Casa do Brasil, LLC*, 646 F. Supp. 3d 847, 853 (S.D. Tex. 2022). "The law instead says that the district court's job is ensuring that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case." *Swales*, 985 F.3d at 440. "Considering, early in the case, whether merits questions can be answered collectively has nothing to do with endorsing the merits." *Id.* at 442.

## SIMILARLY SITUATED ANALYSIS

Plaintiffs request the opportunity to send notice to potential plaintiffs for three claims alleged in the Collective Action Complaint: (1) Grazia operated an unlawful tip pool; (2) Grazia unlawfully required servers to perform substantial amounts of side work at their tipped rate; and (3) Grazia improperly required servers to pay for uniforms and other business-related items. Before diving headfirst into the "similarly situated" analysis, it is important to remember that this case involves one job position (server) at a single restaurant location. Nothing more.

Plaintiffs argue that they have shown the proposed class is similarly situated because all servers maintained identical job titles, performed the same job duties (including side work duties), contributed tips to a mandatory tip pool, and were subject to the same compensation structure and pay policies (all servers at Grazia received an hourly wage of $2.13 plus tips). Nonetheless, Grazia insists that notice is improper because Plaintiffs have failed to show "a common plan to violate the FLSA." Dkt. 25 at 10. Grazia further argues that resolution of the class members' claims will require "highly individualized" inquiries. *Id.* at 12. I disagree.

**A.    TIP POOL CLAIM**

One of my colleagues on the federal bench recently summarized the FLSA requirements for tipped workers as follows:

> The FLSA requires employers to pay their employees the federal minimum wage[, which is currently $7.25 an hour]. 29 U.S.C. § 206(a). Tipped employees must be paid a wage equal to the federal minimum wage, but the tips they receive can count towards that wage if they are paid by employers a minimum of $2.13 per hour. 29 U.S.C. § 203(m)(1–2); 29 C.F.R. § 531.50(a). This is referred to as a "tip credit." An employer using tip credits is required to have (1) informed its employee that it will take a tip credit and (2) allowed tipped employees to keep the tips they received. 29 C.F.R. § 531.50(a). The statute provides an exception to this rule, permitting "the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A)(ii). But "[i]f an employee is required to share tips with an employee who does not customarily and regularly receive

4

> tips, the employer may not legally take a tip credit." *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015); *see also* 29 C.F.R. § 531.50(c). This prohibition applies to employers' managers and supervisors. 29 C.F.R. § 531.52(b)(2).

*Cortez*, 646 F. Supp. 3d at 852.

With this legal framework as a backdrop, Plaintiffs contend that Grazia paid all of its servers less than minimum wage and "required all servers to contribute a percentage of each servers' tips to a mandatory tip pool at the end of each shift, that was not fully distributed solely among customarily and regularly tipped employees." Dkt. 23 at 4. Plaintiffs also allege that servers' contributions to the mandatory tip pool were "shared with floor staff and other employees, such as bussers and hostesses, regardless of whether [those] employees . . . worked during the shift the . . . servers . . . earned the tips pooled." Dkts. 24-14 at 1; 24-16 at 1; 24-17 at 1. These allegations are supported by several declarations attesting to their veracity.

In opposing notice of the tip pool claim, Grazia insists that its tip pools are legal. Grazia claims that bussers and hosts "are eligible to participate in tip pools," and that Plaintiffs have failed "to provide any evidence that [bussers and hosts] were included in the tip pool even when they were not working during the shifts the servers worked." Dkt. 25 at 10. This argument fails for two reasons.

First, Plaintiffs have easily satisfied their burden of establishing similarity at this stage of the proceedings by presenting their own declarations explaining that Grazia used tips from the tip pool to pay employees who did not customarily and regularly receive tips. Although Grazia complains that "Plaintiffs' allegations are mainly based on their own conclusory statements found in their declarations and nothing more," *id.* at 9, I find nothing improper with Plaintiffs' declarations because they are based on personal knowledge obtained during Plaintiffs' employment at Grazia. *See Contreras v. Land Restoration LLC*, No. 1:16-cv-883, 2017 WL 663560, at \*4 (W.D. Tex. Feb. 17, 2017) ("Courts have found that an

employee can have personal knowledge of the employment conditions of other employees by virtue of their work experience.") (collecting cases).

Second, Grazia's argument that it operated a lawful tip pool is inappropriate at the notice stage of an FLSA case. The key inquiry in deciding whether to authorize notice "is not whether a plaintiff will ultimately prevail in proving all the elements of the alleged FLSA violation, but whether the merits of the proposed collective's case can be decided collectively." *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, No. 4:21-cv-00124, 2022 WL 2119542, at *5 (E.D. Tex. June 13, 2022) (cleaned up). "[T]he notice stage is not the equivalent of the dispositive motions stage and thus is not the proper time to adjudicate the lawfulness of Defendants' policy." *Collins v. Pel-State Bulk Plant, LLC*, No. 20-cv-00083, 2021 WL 5234968, at *4 (W.D. Tex. Sept. 29, 2021); *see also Cortez*, 646 F. Supp. 3d at 855 ("Defendant's predominant defense—that its tip pools are valid—does not require this Court's analysis at [the notice stage]."). "The same or nearly the same facts will dispose of such tip pool claims for [Plaintiffs] and [their] proposed collective alike." *Meine v. TCHDallas2, LLC*, No. 3:23-cv-00968, 2024 WL 3345836, at *3 (N.D. Tex. July 9, 2024). As Plaintiffs note, Grazia "does not point to any significant differences or individualized facts . . . that would prevent this Court from determining whether [Grazia] complied with the tip credit on a collective basis." Dkt. 27 at 10; *see also Garcia-Alvarez*, 2022 WL 2119542, at *12 (authorizing notice of a tip pool claim even though the employer disputed whether it violates the law because "the Court can determine the central merits question on a collective basis" and the employer "has not identified differences that require individualized proof or shown how these differences affect adjudication of the alleged common unlawful practice").

In summary, Plaintiffs have met their burden of showing that a similarly situated group of potential plaintiffs exists for the tip pool claim. Notice of such a claim is appropriate.

B.   SIDE WORK CLAIM

Plaintiffs next argue that the putative class is similarly situated as to the claim that Grazia failed to properly compensate servers for the amount of time they spent performing non-tipped job duties ("side work").

The law addressing side work can be summarized as follows:

> Under the FLSA, an employer may rely on the tip credit exception for a tipped employee who spends a portion of time performing work that directly supports tip-producing work, but is not itself tip-producing. 29 C.F.R. § 531.56(f). The time spent on the supporting work must not exceed twenty percent of the employee's work. *Id.* A server's directly supporting work includes "dining room prep work, such as refilling salt and pepper shakers and ketchup bottles, rolling silverware, folding napkins, sweeping or vacuuming under tables in the dining area, and setting and bussing tables." *Id.* An employer may not rely on the tip credit exception for work that does not directly support the tip-producing work. *Id.*

*Paschal v. Perry's Rests., Ltd.*, No. 1:22-cv-00027, 2023 WL 2784864, at *5 (W.D. Tex. Apr. 4, 2023).

Plaintiffs argue that all Grazia servers are similarly situated because they received a subminimum hourly wage to perform side work, both related and unrelated to their tipped occupation as servers. To support this claim, Plaintiffs submit four declarations, all stating that the declarants

- performed various side work related to their job as a server, including "rolling silverware, wiping down tables, setting tables, [and] busing tables"; and
- performed unrelated side work such as "sweeping, cleaning, polishing silverware and glasses, cleaning the restaurant, kitchen duties, breaking down stations, . . . restocking items, cleaning and setting up the bread station and many other duties" unrelated to a server's job; and
- "typically spent at least 1-3 hours performing" side work and "spent more than 50% of [their] time each work shift in each workweek performing non-tipped job duties related and unrelated to [their] job[s] as . . . server[s]."

Dkts. 24-14 at 2; 24-15 at 2; 24-16 at 2; and 24-17 at 2. According to Plaintiffs, all servers at Grazia "spent a continuous period exceeding thirty (30) minutes[] each

7

shift performing non-tipped duties related to [their] job occupation as servers." *Id.* All told, the time the servers spent on side-work "easily exceeded twenty percent (20%) of each shift [they] worked in each workweek." Dkts. 24-14 at 2–3; 24-15 at 2; 24-16 at 2–3; and 24-17 at 2–3.

Grazia makes two arguments for why it believes collective treatment is inappropriate on the side work claim. First, Grazia claims that "Plaintiffs provide no evidence to show that any work they were required to do was unrelated to their occupation other than their offer of conclusory allegations." Dkt. 25 at 11. As already explained, Plaintiffs' declarations—which are based on their personal knowledge obtained during employment with Grazia and discussions with other servers—are sufficient to establish that all Grazia servers are similarly situated with respect to the side work claim.[2]

Second, Grazia argues that Plaintiffs' side work claim cannot be handled collectively because resolution of the dispute requires individualized inquiries into each server's experience, including whether a particular server worked a morning or afternoon shift, whether a server performed a particular side work task on any given day, and which manager and assistant manager each server reported to during their shifts. This argument does not pass "GO." Although putative class members differ in what time they reported to work, who they reported to, and what specific side work tasks they performed on a particular day, these differences do not preclude collective treatment of Plaintiffs' side work claim. *See Green v. Perry's Rests. Ltd*, No. 21-cv-0023, 2022 WL 16744795, at *5 (D. Colo. Nov. 7, 2022) (rejecting "arguments that the side work claims are inherently

---

[2] Grazia asserts that the payroll registries disprove Plaintiffs' side work claim because they show that Tran received a $7.25 minimum wage as a busser during a single pay period. Candidly, I do not understand how such evidence undercuts Plaintiffs' side work claim; it merely demonstrates that Tran performed a job other than server for one pay period. No matter, Grazia's argument falls on deaf ears at the notice stage because "the similarly situated determination is not an opportunity for the court to assess the merits of any claim by deciding factual disputes or making credibility determinations." *Segovia v. Fuelco Energy LLC*, No. SA-17-cv-1246, 2021 WL 2187956, at *7 (W.D. Tex. May 28, 2021) (cleaned up).

8

individualized because duties, schedules, and locations where servers performed job duties varied"); *Segovia*, 2021 WL 2187956, at *9 ("[T]he question is not whether Plaintiffs all have the same exact work day, but rather whether they are all subjected to a common policy, plan, or practice—the same factual and employment settings." (quotation omitted)). Accordingly, I "find[] that the common issue whether [Grazia] required servers to perform unrelated side work or significant amounts of related side work predominates over individual differences." *Paschal*, 2023 WL 2784864, at *6; *see also Brixey v. McAdoo's Seafood Co.*, No. SA-23-cv-00232, 2024 WL 57011, at *5 (W.D. Tex. Jan. 2, 2024) ("The common issue is whether Defendants required servers and bartenders to perform side work unrelated to their tipped occupations, and the Court finds that this issue predominates over any individual differences regarding the precise type of such work."). Notice should issue on the side work claim.

### C.   MANDATORY UNIFORMS AND OTHER BUSINESS-RELATED ITEMS CLAIM

Plaintiffs also raise a claim that Grazia improperly required them to pay for "mandatory uniforms, tools, and other business-related items such as server books, wine keys, lighters, pens, walked tabs or leftover tabs, TABC certification and food handlers license[s]." Dkts. 24-14 at 3, 24-15 at 3, 24-16 at 3, 24-17 at 3.[3] As with the other claims, Plaintiffs offer declarations to support these allegations. Additionally, Plaintiffs have responded to a discovery request "[d]escrib[ing] each item that [they] were made to purchase during [their] employment with [Grazia]." Dkt. 26-3 at 12–13.

Without offering any evidence, Grazia simply asserts that "Plaintiffs were not subject to a mandatory uniform." Dkt. 25 at 12. Although Grazia concedes that

---

[3] "The wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35. "Uniforms are primarily for the benefit of the employer," so "a minimum wage employee cannot be required to purchase their own uniforms." *Nail v. Shipp*, No. 17-00195, 2019 WL 3719397, at *7 (S.D. Ala. Aug. 6, 2019).

9

employees were told "they could wear items such as ordinary button-down shirts, black or khaki pants, and slip-resistant shoes," the company insists that such "items are ordinary 'street' wear and not considered a uniform under the FLSA." *Id.* at 12–13. As I have already explained, "[t]he notice stage is not when the court should consider whether Plaintiff[s] can prove an FLSA violation." *Barker v. ITL Foods, LP*, H-22-342, 2023 WL 5613409, at *4 (S.D. Tex. July 24, 2023). At this juncture I am simply "deciding whether the similarities among the [servers] justify a collective proceeding, not whether the [servers] have valid claims." *Meine*, 2024 WL 3345836, at *4. Plaintiffs' allegations that all servers were required to pay for uniforms and purchase other business-related items is sufficient, at the notice phase, to establish that the servers are similarly situated. The issue of whether Grazia actually required servers to pay for uniforms and other business-related items can be determined on a collective basis. *See Paschal*, 2023 WL 2784864, at *7 (authorizing notice to a group of restaurant servers who were allegedly subject to a policy requiring them to purchase uniforms and equipment at their own expense). Notice should be authorized on the mandatory uniforms and other business-related items claim.

## FORM OF NOTICE AND RELATED ISSUES

Having found that the proposed class is similarly situated and that notice is warranted, I now turn to the appropriate form of that notice and related issues. Generally speaking, a district court has broad discretion regarding the details of the notice sent to potential opt-in plaintiffs. *See Hoffman-LaRoche*, 493 U.S. at 171.

Plaintiffs have attached to their Motion for Court Authorized Notice the following: (1) a proposed notice and consent form; (2) a proposed text message and email notice; and (3) a proposed reminder notice. *See* Dkts. 24-18 to 24-20. At the outset, it is worth noting that the proposed notice and consent form submitted by Plaintiffs is nearly identical to the notice and consent form that I have posted on my website and highly encourage litigants to use.

Grazia offers several objections to Plaintiffs' proposed notices and the related logistics. I will address Grazia's complaints one-by-one.

A.  **SCOPE OF COLLECTIVE ACTION**

Grazia argues that notice should be limited to the three-year period prior to the filing of the complaint. Plaintiffs contend that notice should run three years from the date this court authorizes notice. I have previously explained that "the more persuasive authority" counsels in favor of the notice period beginning on the date the court approves notice. *Wade v. Furmanite Am., Inc.*, No. 3:17-cv-00169, 2018 WL 2088011, at *5 n.5 (S.D. Tex. May 4, 2018). As succinctly explained by Judge Sim Lake:

> An FLSA cause of action "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "Based on the statute of limitations, courts have recognized that class certification is appropriately limited to workers employed by the defendant up to three years before notice is approved by the court." *Tolentino v. C & J Spec Rent Services Inc.*, 716 F. Supp. 2d 642, 654 (S.D. Tex. 2010). "Thus, the notice period must commence three years prior to the court's approval of notice." *Id.*

*Baucum v. Marathon Oil Corp.*, No. H–16–3278, 2017 WL 3017509, at *3 (S.D. Tex. July 14, 2017). The overwhelming majority of courts follow this approach. *See Molina-Torres v. Harris Cnty. Constable Precinct 6*, No. 4:23-cv-01786, 2024 WL 1703089, at *6 (S.D. Tex. Apr. 19, 2024) ("[T]he three-year period should be measured from the date the Court approves notice, not the date Plaintiff's Complaint was filed.") (collecting cases); *Paschal*, 2023 WL 2784864, at *7 ("[T]he class should be limited to servers employed by Defendants up to three years before the District Court certifies the class, if it does so."). Accordingly, the collective in this case should be limited to those servers who worked for Grazia during the three-year period beginning February 21, 2022 through February 21, 2025.

B.  **METHODS OF PROVIDING NOTICE**

Next, Grazia objects to sending notice via text message and email. That objection is overruled. As I have said before, "mail, e-mail, and text-message notice will all help facilitate the FLSA's overarching goal of providing potential class members the opportunity to join the case." *Kibodeaux v. A&D Ints., Inc.*, 579 F. Supp. 3d 896, 911 (S.D. Tex. 2022), *vacated on other grounds sub nom. In re A&D Ints., Inc.*, 33 F.4th 254 (5th Cir. 2022). Because I am convinced that notice by email and text message will increase the likelihood that class members will learn about this lawsuit, I approve the use of both forms of notice in this case. *See Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 672 (S.D. Tex. 2020) ("I find that providing notice via text message in addition to other traditional notice methods will almost always be appropriate in modern society."); *Wade*, 2018 WL 2088011, at *7 (finding email notice is appropriate because its use "is more likely to result in potential plaintiffs receiving notice of the lawsuit than by a single delivery method.").

C.  **REMINDER NOTICE**

Grazia objects to Plaintiffs sending a reminder notice to potential class members. I firmly believe that reminder notices to potential class members are appropriate. In a previous opinion approving the use of reminder notices, I explained:

> To me, the benefits to be gained by sending a reminder notice far outweigh any potential disadvantages. A reminder notice provides a second chance to potential plaintiffs who, for whatever reason, do not receive, open, or view the initial letter, email, or text message providing notice. A reminder notice also helps ensure that those potential plaintiffs, who read the original notice but forget about it in the hustle and bustle of daily life, are reminded at least once about their opportunity to join the lawsuit. Defendants' concern, that a reminder notice can give an inaccurate impression that the Court actively promotes participation in the collective action, can be easily solved. The class notice can simply include language expressly stating that the Court does not encourage or discourage participation in the case. . . . I find that a reminder notice is a reasonable way to see that

> potential class members receive notice of the action and have a chance to decide whether to participate in the case. I see no downside to a reminder notice as Defendants will not be unduly burdened or prejudiced.

*Dickensheets*, 440 F. Supp. 3d at 673. For these reasons, I will allow Plaintiffs to send a reminder notice to class members. To alleviate any concern that a reminder notice will be viewed as an endorsement by the court to opt into the lawsuit, the following language should be added to the proposed reminder notice: "The court handling this matter does not encourage or discourage participation in the case."

### D.   DISCLOSURE OF CONTACT INFORMATION

Plaintiffs ask that Grazia "be ordered to produce, within fourteen (14) days of granting this Motion, a list in a useable electronic (.xls) format of names, last known addresses, telephone numbers, e-mail addresses, and dates of employment for all members of the collective." Dkt. 23 at 17. Grazia objects to this request stating that "[p]ast servers have a right of privacy" and "Plaintiffs have not shown the need for such disclosures." Dkt. 25 at 13. These objections are meritless. "Courts routinely order defendants to provide the names, addresses, emails, and phone numbers of employees to facilitate notice in FLSA collective actions." *Molina-Torres*, 2024 WL 1703089, at *7. Requiring Grazia to produce such information is the only way to ensure that notice is accomplished. As to the privacy objection, the need for compelled disclosure of prospective class members' contact information outweighs an individual's privacy interests. I therefore order Grazia to produce such information to Plaintiffs in an electronic format within 14 days.

### E.   LIABILITY FOR COSTS LANGUAGE

Finally, Grazia requests that the notice and consent form be modified to "inform the proposed collective that they may be required to pay" costs "if a judgment is unfavorable to them." Dkt. 25 at 14. This is the first time I have addressed this particular issue. Although I am fully aware that courts are split on whether notice should include language that opt-ins might have to pay their

13

proportional share of taxable court costs if they do not prevail in this case, I do not think such language is necessary.

To start, Grazia "has not provided any reason to believe that should [Grazia] prevail, any costs assessed against plaintiffs would be more than de minimus with respect to each individual." *Diaz v. Applied Mach. Corp.*, No. H-15-1282, 2016 WL 3568087, at *13 (S.D. Tex. June 24, 2016). Additionally, I am genuinely concerned that warning potential plaintiffs that they might be required to pay costs and expenses may have "an in terrorem effect that is disproportionate to the actual likelihood that such costs will significantly occur." *Reyes v. Bona 1372, Inc.*, No. 1:17-cv-16, 2017 WL 5148367, at *10 (E.D. Tex. Oct. 17, 2017) (quotation omitted). Overall, Grazia has not convinced me there is a good reason to require the FLSA notice to contain references to the possibility that opt-in plaintiffs might be responsible for court costs. "[I]t is the responsibility of class counsel to render class members appropriate advice on such matters." *Sanchez v. R&R Multi-Trade Constr. Servs., LLC*, No. 4:17-cv-469, 2018 WL 6582825, at *5 (E.D. Tex. Oct. 25, 2018).

## CONCLUSION

Plaintiffs have made a sufficient showing at this preliminary stage that there is a similarly situated group of servers to warrant the issuance of notice. As such, Plaintiffs' Motion for Court Authorized Notice (Dkt. 23) is granted. Notice shall issue to:

> All current and former employees who worked at least one shift as a server (i.e. waiter or waitress) for Grazia in Texas and were paid a direct cash wage of less than minimum wage during the three-year period beginning on February 21, 2022 through February 21, 2025.

I approve Plaintiffs' proposed notice and consent form (Dkt. 24-18), text message and email notice (Dkt. 24-19), and reminder notice (Dkt. 24-20), with the modifications discussed in this Opinion and Order.

Grazia is ordered to provide Plaintiffs with a list of all employees fitting the description of the collective in a usable electronic format by March 7, 2025. This

list shall include each individual's full name, last known mailing address, e-mail address, mobile telephone number, and date(s) of employment. Plaintiffs shall have 14 days from the receipt of this information to send notice to the potential class members by first-class mail, email, and text message. The opt-in period shall be 90 days from the date the notice is sent. A reminder notice may be sent to potential class members by first-class mail, email, and text message 30 days after the initial notice is sent. Potential plaintiffs may execute consent forms by means of electronic signature. Finally, Plaintiffs' counsel may maintain a website for the purpose of informing similarly situated persons of their right to opt into this litigation.

    SIGNED this 21st day of February 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE